UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:19-CR-92-HAB |
| | ) | |
| ADAM O. HENRY | ) | |

**OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion to Suppress and Request for an Evidentiary Hearing (ECF No. 35). The Court held an evidentiary hearing on Defendant's motion on February 4, 2021. Thereafter, the parties briefed the issues. (*See* ECF Nos. 53, 54). Defendant's deadline to file a reply having now expired, the motion is ripe for determination.

**A.     Factual Background**

On September 28, 2020, Defendant and an unidentified friend went to the Fort Wayne International Airport to rent a car. They selected the National/Alamo car rental counter. Despite not having a valid driver's license, Defendant was allowed to rent a black Dodge Challenger, ostensibly under the guise that he was paying for the rental but his friend would be the driver. The record is unclear as to how Defendant managed to convince the National/Alamo employee to rent him a vehicle, but it is clear that it was against company policy to rent a vehicle to a person without a driver's license.

As one must when driving a Dodge Challenger, Defendant left the rental lot at a high rate of speed, chirping gears and pulling brodies.[1] Airport police Captain Scott Minniear witnessed Defendant leave the rental lot and gave pursuit. After witnessing Defendant pass in a no passing

---

[1] JOE DIRT (Sony Pictures 2001).

zone and leave a stop light at a high rate of speed, Minniear made the decision to initiate a traffic stop. Defendant complied, stopping the vehicle in the middle of the road.

Minniear approached the vehicle and asked Defendant to move the vehicle to the side of the road, which Defendant did. Minniear then asked Defendant for his license and registration. Being unlicensed, Defendant produced an Illinois identification card as well as the rental documents. Having determined that Defendant could not legally operate the vehicle, Minniear instructed Defendant to park the vehicle in a nearby business parking lot. Once the vehicle had been moved, Minniear took possession of the keys and locked the vehicle. Minniear advised Defendant that, while Defendant was not under arrest, the two would be returning to the airport to find out how Defendant managed to rent a vehicle without a valid license. Defendant was handcuffed and placed in the back of Minniear's patrol car for the short drive.

Once back at the airport, Defendant was uncuffed and he and Minniear returned to the rental counter. Upon being advised that Defendant had no driver's license, the National/Alamo supervisor immediately voided the rental contract. Minniear then returned the keys to the supervisor, who, in turn, gave them to another employee with instructions to retrieve the vehicle. Minniear then advised Defendant that he was not being charged with anything at that time and left the area.

Once Minniear left, Defendant advised the supervisor that Defendant needed to retrieve his bag from the vehicle. The supervisor told Defendant that, while Defendant could not get back into the vehicle, the bag would be retrieved for him. Shortly thereafter, Defendant approached the counter again, reiterating that he needed to retrieve his bag as well as something under the seat. Defendant advised that he had a "right to carry," which the supervisor interpreted as meaning Defendant had a firearm under the seat.

The supervisor flagged down Minniear to tell Minnear that the supervisor believed there was a firearm in the vehicle. Minniear then accompanied the supervisor to the rental lot where the vehicle had been parked. During a search of the vehicle, Minniear found a handgun under the driver's seat and a bag containing various pills in the back seat. Minniear then returned to the airport and spoke to Defendant about what the search had uncovered. Defendant denied any knowledge of the firearm or the bag. Ultimately, Minniear issued Defendant citations for driving without a license and driving left of center.

**B.     Legal Analysis**

Defendant's principal brief is a tour de force of concessions. Defendant concedes that Minniear had reasonable suspicion to initiate the stop. (ECF No. 53 at 2). He concedes that he no longer had an expectation of privacy in the vehicle at the time of the search, after the rental contract had been voided. (*Id*. at 5). He further concedes that Minniear, at any point in time, had the "right to legally impound [the] rental car due to violations of the rental agreement." (*Id*.). All valid concessions, and all helpful in narrowing the issues for the Court.

At this point, however, the astute reader will ask themselves: what's left? Unfortunately, Defendant's brief provides little in the way of an answer. As best as the Court can determine, Defendant appears to contend that, by taking the keys and locking the vehicle at the conclusion of the initial stop, Minniear "interfered with the Defendant's use of the vehicle while the Defendant still had a contractual interest in the car." (ECF No. 6–7). While that's certainly a sentence, it's not a basis to suppress evidence.

Every investigative stop, in some sense, interferes with the use of a vehicle. That's why it's called a "stop," after all. Accordingly, the Fourth Amendment does not protect individuals from having an officer interfere with their trip. Instead, only an unreasonable detention is

3

prohibited. *United States v. Finkle*, 85 F.3d 1275, 1279 (7th Cir. 1996) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1986)) (noting that, in the context of a traffic stop, "'the least intrusive means reasonably available to verify or dispel the officer's suspicion' must be employed."). At no point in time does Defendant argue, much less demonstrate, that the stop, the investigative tactics used, or the stop's duration were unreasonable. Defendant, then, fails to raise any basis upon which the Court could order suppression.

If the Court squints hard enough it can, as the Government apparently did, discern from the facts a possible argument that Minniear unreasonably extended the duration of the stop when he transported Defendant back to the airport. *See, e.g.*, *United States v. Vanichromanee*, 742 F.2d 340, 345 (7th Cir. 1984) (noting that the movement of a detainee may, under the appropriate circumstances, transform an investigative stop into an arrest). But Defendant does not make this argument. And, of course, the Court is not "obligated to do [Defendant's] research or make arguments for him" even in the case of a pro se litigant, much less one like Defendant who is represented by counsel. *United States v. $29,552.00 in U.S. Currency*, 2017 WL 2953395 at *1 (N.D. Ind. July 11, 2017) (quotations omitted). If Defendant's experienced defense counsel did not see fit to make this argument, the Court will not second guess that decision.

What the Court is left with, then, is a case where no basis for suppression has been articulated. This makes the decision straightforward.

**C.   Conclusion**

For the foregoing reasons, Defendant's Motion to Suppress and Request for an Evidentiary Hearing (ECF No. 35) is DENIED.

SO ORDERED on May 26, 2021.

        s/ Holly A. Brady
        JUDGE HOLLY A. BRADY
        UNITED STATES DISTRICT COURT